In accordance with the Opinion of the North Carolina Court of appeals, the undersigned have reviewed the evidence concerning plaintiff's employability based upon the record of the proceedings before the Deputy Commissioner and the briefs of the parties.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
STIPULATIONS
1. A Pre-trial Agreement, which is hereby incorporated by reference in which the parties agreed to a number of jurisdictional and other factual stipulations, including the attached medical records as well as certain employment records.
2. Depositions of Drs. J. Gregg Hardy, Ira M. Hardy and Joseph Weaver as well as the private investigators involved are made a part of the evidentiary record in this case.
3. Each of the Industrial Commission's prior Awards is hereby incorporated by reference.
* * * * * * * * *
The Full Commission makes the following findings of fact in accordance with the Opinion of the North Carolina Court of Appeals:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 31-year-old divorced male who graduated from high school in 1981 and while still in high school worked at Hardee's. In February of 1982, he initially became employed by defendant inside the premises of its Lewiston poultry processing plant until being terminated five years later from his "bone puller's job" in the "cut up" department because of his failure to return to work after being on leave of absence for a year from a January 29, 1986 back injury sustained in an automobile accident.
2. Subsequently, plaintiff went to truck driving school in Greensboro. On June 20, 1988, plaintiff returned to work for defendant as a truck driver in the "live haul" department where he was responsible not only for delivering live birds to the plant for processing requiring him to drive within a 150-mile radius to pick up the birds from various growers, but also for covering his load with canvas during the winter or inclement weather. In the interim plaintiff had done carpentry work and odd jobs for his cousin.
3. Plaintiff not only has a long history of back problems, but has been involved in a number of automobile accidents injuring his back, including the aforementioned one in 1986 when he was out of work for a year because of a left-sided disc herniation at the L5-S1 level of his spine and another in 1988 when he was out of work for four or five months and as a result retained a nine percent permanent partial disability of the back prior to the September 10, 1991 date in question.
In addition, plaintiff suffers from an underlying dependent-personality resulting in him having difficulty dealing with stress because of his tendency to be anxious and nervous; moreover, his dependent-personality type does not emotionally handle the disruption of an already very tenuous lifestyle, nor does he have the insight to understand the large psychological component involved in the chronic incapacitating back pain he experiences from his September 10, 1991 back injury.
4. Despite his long history of back problems and underlying dependent-personality, prior to his September 10, 1991 back injury, plaintiff nevertheless had been able to cope with his back problems and not only ultimately been able to return to work and continue regularly working until the date in question, but also was able to resume a normal lifestyle enabling him to run, lift weights and play various sports.
In fact, as indicated by the job performance evaluations for the years 1989 and 1990, plaintiff received very good job performance ratings for both years, having very good attendance in 1989 and outstanding attendance in 1990.
5. On September 10, 1991, plaintiff was delivering a tractor trailer load of birds to a shed on the defendant's premises when a forklift backed into his vehicle damaging the tractor's tandem wheels at which time plaintiff experienced sharp pain in his lower back and sustained a right-sided disc herniation at the L4-L5 level of his lumbosacral spine resulting in the admittedly compensable back injury giving rise to the Industrial Commission's multiple prior Awards.
6. Plaintiff was initially treated conservatively with medication and physical therapy but when his condition did not improve, he was referred to an orthopedic surgeon, Dr. Stuart Lee. Thereafter, on September 18, 1991, plaintiff came under the care of Dr. Lee who also attempted conservative treatment, but ultimately he performed corrective surgery for plaintiff's resulting disc herniation in January of the following year because of plaintiff's incapacitating back and leg pain.
7. Plaintiff's condition did not significantly improve following his back surgery. Therefore, Dr. Lee referred him to a neurologist, Dr. J. Gregg Hardy, for evaluation. On May 6, 1991, Dr. Hardy initially saw plaintiff and attempted a conservative course of treatment, but was similarly unsuccessful in alleviating plaintiff's incapacitating back and leg pain. During this same period, plaintiff was also being treated by his family physician, Dr. Joseph Weaver, and remained under his care to the date of the hearing. Upon Dr. Weaver's referral, plaintiff has been seen for a second opinion by neurologist, Dr. Barry Hurwitz, at Duke University Medical Center on three occasions, January 28, 1993, February 25, 1993 and March 10, 1993. Dr. Hurwitz not only recommended a continued course of conservative treatment, but also a psychological evaluation and treatment because of the significant depression that plaintiff suffers as a result of his incapacitating back and leg pain resulting from his September 10, 1991 back injury, with which plaintiff has difficulty emotionally dealing because of his underlying dependent personality. Plaintiff's resulting depression significantly contributes to the incapacitating pain he perceives, which is as incapacitating as the pain he, in fact, experiences.
8. As a result of the permanent back injury he sustained on September 10, 1991, plaintiff remains unable to return to his regular truck driving job for defendant. Although on several occasions following his injury, plaintiff attempted to return to light duty work for defendant, he was unable because of the chronic and incapacitating back and leg pain from his September 10, 1991 back injury and has remained totally incapacitated thereby since the last occasion on December 6, 1991 when he again unsuccessfully attempted to return to light work for defendant for a one-week period resulting in the award of temporary partial disability benefits that was subject of the Industrial Commission's last award herein.
9. The light-duty job that defendant attempted to provide plaintiff was a sedentary one involving plaintiff sitting at a dispatcher's desk in the scale house where he was responsible for answering the telephone and handling log books among other duties; however, the required sitting aggravated his chronic and incapacitating back and leg pain as did the 30-minute drive to and from work resulting in him being unable to perform the job. Although this job had similar physical requirements to the dispatcher's job, it was not the dispatcher's job nor one that defendant would have had available on a permanent basis.
Because of his chronic back and leg pain, plaintiff must use a cane to ambulate and continues to experience difficulty sleeping.
10. At some time earlier, plaintiff had borrowed money from his mother to purchase a flatbed wrecker and allowed an unemployed friend to use the same vehicle. In approximately May of 1993, a month and a half prior to hearing, after that friend had obtained an engineering job with the Department of Transportation and because plaintiff was neither then receiving workers' compensation benefits nor had any other source of income, plaintiff attempted to use the same vehicle to start a salvage business selling automotive scrap to a junkyard in Suffolk, Virginia. Although plaintiff was often times present at his girlfriend's residence where the scrap metal was collected and observed the work, he did not take a significant active physical role in the business operation, but rather left that to his friends, who he paid out of the proceeds of the sales to the junkyard.
11. Plaintiff is unable to return to his regular truck driving job for defendant-employer, and defendant has not been able to provide the type of lighter work plaintiff will require because of his incapacitating back and leg pain. Plaintiff has made reasonable efforts to obtain employment in that he has attempted to return to work with defendant on several occasions, has inquired at Wal-mart regarding employment, and has attempted a self-owned salvage business but has been unsuccessful in each attempt.
12. To the extent defendant is able to provide plaintiff with the type of suitable light-duty work he requires or to the extent defendant desires to engage the services of a vocational rehabilitation specialist to help him obtain it, plaintiff is obligated to attempt any suitable light-duty work offered and to cooperate in any reasonable vocational rehabilitation. If plaintiff does not cooperate, he is subject to his benefits being suspended until he does.
13. Plaintiff remains in need of the type of aggressive conservative management program recommended by Dr. Hurwitz as well as psychological evaluation and treatment for the concurrent significant depression he experiences as a result of his injury.
* * * * * * * * * * *
Based on the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
1. As a result of the permanent back injury that plaintiff sustained on September 10, 1991, plaintiff has remained totally disabled since December 13, 1992 when he last unsuccessfully attempted to return to light-duty work for defendant-employer entitling him to compensation at a rate of $260.32 per week from December 13, 1992 and continuing, subject to a reasonable attorney's fee, until he returns to work, sustains a change of condition, or further Order of the Commission. N.C. Gen. Stat. §97-29.
2. Plaintiff is entitled to all reasonable and necessary medical expenses incurred or to be incurred by plaintiff as a result of the September 10, 1991 injury by accident, including the aggressive conservative management program and psychological evaluation and treatment recommended by Dr. Hurwitz to the extent it tends to effect a cure, provide needed relief and/or lessen the period of disability. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusion of law, the Full Commission enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of his continuing temporary total disability, compensation at a rate of $260.32 per week from December 13, 1992 continuing until he returns to work, sustains a change of condition, or further Order of the Commission. Such compensation having accrued shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. A reasonable attorney fee in the amount of twenty-five percent of the accrued compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the same award and forwarded directly thereto. For the balance of his fee, defendant shall forward every fourth compensation check payable directly to plaintiff's counsel.
3. Defendant shall pay all reasonable and necessary medical expenses incurred or to be incurred by plaintiff as a result of the September 10, 1991 injury by accident to the extent it tends to effect a cure, provide needed relief and/or lessen the period of disability, including the aggressive conservative management program and psychological evaluation and treatment recommended by Dr. Hurwitz, when bills for the same are submitted according to proper Industrial Commission procedure.
4. Defendant shall bear the costs, including the expert witness fees previously awarded the physicians involved for their deposition testimony to the extent the same have not already been paid.
ORDER
1. Plaintiff shall comply with vocational rehabilitation provided by defendants.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ WILLIAM C. BOST DEPUTY COMMISSIONER